UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MARTIN HAYES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action Number |
| ) | **2:14-cv-2322-AKK** |
| **VOESTALPINE NORTRAK, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Martin Hayes pursues this case against voestalpine Nortrak, Inc. ("Nortrak") under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2611 *et seq*. Doc. 1. Hayes alleges that Nortrak failed to accommodate his disability as required by the ADA when it discharged him after he missed work to treat his disability. *Id.* He also alleges that Nortrak interfered with his rights under the FMLA and then retaliated against him for attempting to exercise those rights. *Id.* Nortrak has moved for summary judgment, doc. 19, and the motion is fully briefed and ripe for review, docs. 20; 21; 26; 27; 28. Based on a review of the evidence and the law, the court finds that Hayes has failed to present sufficient evidence to support his ADA failure to accommodate claim and his FMLA retaliation claim. However, Hayes has presented sufficient evidence to present a question for the jury with respect to his FMLA interference claim.

1

# SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To support a summary judgment motion, the parties must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). Moreover, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all

justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## FACTUAL ALLEGATIONS

Sometime after hiring Hayes in 1993, Nortrak promoted Hayes to track technician. Hayes held this position until his discharge in 2013. Track technicians fabricate and fit parts to construct a frog, which is an assemblage of metal alloy castings and bent pieces of railroad rail that can be sold separately or included as part of a railroad or transit project. Doc. 20 at 3, n.2. The essential functions of a

track technician include grinding,[1] standing, walking, lifting more than fifty pounds, and regular attendance. Doc. 21-2 at 82.

In 2013, Nortrak instituted a no-fault attendance policy. Doc. 26-1 at 7. The policy assigned different point values to attendance infractions, and an employee is discharged after accumulating thirteen points.[2] Doc. 21-2 at 135. The policy impacted Hayes significantly due to orthopedic injuries that he began developing in 2009. Doc. 26 at 2. These injuries led to carpal-tunnel release surgery on his left wrist in 2010 and on his right wrist in 2012. *Id.* To avoid accumulating points under the no-fault attendance policy, Hayes initially used the majority of his vacation time as emergency vacation days when he needed to seek treatment for his injuries. *Id.* However, after exhausting his vacation time, Hayes began accumulating points under the policy. *Id*

Hayes accumulated one point in March and three points in May, all for leaving work early. Doc. 21-4 at 57. Beginning on June 2, 2013, Hayes missed five consecutive days. Hayes used four emergency vacation days for the first four days and did not accumulate any points as a result. However, he accumulated two points

---

[1] Grinding is the process by which frog castings are modified for difference uses. It involves the use of heavy grinders and impact wrenches "which require heavy lifting and repetitive swaying motions to grind the rail into specifications." Doc. 20 at 3, n.2.

[2] For example, a tardy up to thirty minutes is assessed half a point if the employee contacted her supervisor prior to the start of the shift, and a full point otherwise. Doc. 21-2 at 132. By the same token, an absence is assessed two points if the employee contacts Nortrak prior to the shift start and six points if she does not do so. *Id*. However, where an absence is due to illness or injury that exceeds one day and if the employee is also under the care of a physician, the first day and subsequent consecutive days are treated as a single occurrence provided that the employee provides notice to Human Resources "upon his or her return to work or, in the case of an extended illness, as soon as is practicable." *Id.* at 134.

for the last day. Doc. 26 at 3; Doc. 26-1 at 11–13. Hayes takes issue with the two points assessed because of his contention that he informed his supervisor, John Patton, and the Production Manager, Johnny Myrick, daily that he was using his vacation days due to leg and knee pain. Doc. 26 at 3. Hayes also accumulated another point for leaving early on June 12, 2013 and another two points for missing work on June 13, 2013, all three of which he also challenges. Docs. 26 at 3–4; 21-4 at 57. Relevant here, although he challenges these five points, Hayes concedes that he did not provide a medical excuse when he returned to work after these absences. Doc. 21-2 at 57–58. Hayes also accumulated two more points for an absence on June 11, 2013, for a total of eleven points, doc. 21-4 at 57, and accumulated his twelfth point on June 25 when he left work early. Doc. 26-1 at 8.

Presumably because he was only one point shy of a discharge, in July 2013, the Director of Human Resources, Clay Johnston, met with Hayes to discuss his points accumulation. Doc. 21-2 at 54. Apparently, Hayes mentioned his medical issues during this meeting and Johnston discussed the possibility of retroactively designating some of the vacation days Hayes had used for medical visits as FMLA leave, if Hayes provided the appropriate documentation. Docs. 21-2 at 56; 21-4 at 43–44. Johnston and Hayes also discussed the possibility of Hayes using FMLA leave for subsequent absences, and Johnston provided Hayes the relevant form for Hayes' physician to complete. Doc. 26 at 3. A few days later, Dr. Ronald Moon, M.D., completed the certification form and submitted it to Nortrak. Doc. 21-4.

5

After reviewing the document, Johnston determined that Hayes did not qualify for FMLA because of Dr. Moon's failure to indicate whether Hayes would be incapacitated for any period of time or if Hayes needed a reduced work schedule. Doc. 21-4 at 21–22. Hayes did not pursue the matter further with Dr. Moon, nor did Hayes provide the information to retroactively designate vacation days as FMLA leave. Doc. 21-2 at 55–56.

Sometime after arriving at work on September 16, 2013, Hayes experienced an episode of debilitating pain and informed his supervisor that he needed to leave early to visit the emergency room. Doc. 26 at 5. Hayes subsequently visited the ER and received a note excusing him from work until September 19, 2013. *Id.* Hayes intended to bring the note with him when he returned to work on September 19. *Id.* at 7 ("Company policy requires that I deliver the medical excuse when I return to work."). As a result, when Hayes called the next day to report his absence, Hayes stated only "that [his] doctor had taken [him] off work on September 17, 2013." Docs. 21-2 at 62–63; 26 at 7. In light of Hayes' early departure the day before, Human Resources assessed Hayes a point under the no-fault policy, raising Hayes' accumulated total to thirteen. Doc. 26-1 at 30. Consequently, Johnston called Hayes at home on September 17, and discharged him for excessive absences in violation of the attendance policy. Docs. 26 at 7; 21-2 at 62 and 66. During the phone call, Hayes never conveyed to Johnston that he left work early for medical

reasons or that he had, in fact, visited a doctor and obtained a medical excuse from the doctor. Doc. 21-2 at 66.

## ANALYSIS

Hayes alleges violations of the ADA (Count I), and FMLA interference (Count II), and retaliation (Count III) claims. The court addresses these claims below.

### A. ADA Violations (Count I)

Nortrak challenges Hayes' disability claim on two grounds: (1) that Hayes is not an otherwise "qualified person" with a disability due to his failure to propose a reasonable accommodation that would enable him to perform his job; and (2) that Hayes is estopped from arguing that he is an otherwise qualified individual with a disability in light of Hayes' claim of total disability on his application for Social Security Disability Insurance ("SSDI"). Doc. 20 at 6, 29. The court agrees.

The ADA prohibits discrimination against a qualified individual with a disability. A qualified individual is someone who can perform the essential functions of her position, with or without a reasonable accommodation. 42 U.S.C. §§ 12111(a) and 12112. SSDI provides benefits to persons who are unable to perform their previous work and "cannot . . . engage in any other kind of substantial gainful work that exists in the national economy." 42 U.S.C. § 423(d)(2)(A). While the two statutes may seem to conflict, the Supreme Court has

7

found that because the Social Security Administration does not consider the effect of a reasonable accommodation on a claimant's ability to work, "an ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it." *Cleveland v. Policy Management Systems, Corp.*, 526 U.S. 795, 803 (1999) (emphasis original). However, the receipt of SSDI creates a rebuttable presumption that the plaintiff is judicially estopped from asserting that she is a qualified individual with a disability. *Id.*; *see also Siudock v. Volusia Cty. Sch. Bd.*, 568 F. App'x 659, 662 (11th Cir. 2014). As a result, to survive summary judgment, a plaintiff "cannot simply ignore [her] SSDI contention that [she] was too disabled to work," but "must explain why that SSDI contention is consistent with [her] ADA claim that [she] could 'perform the essential functions' of [her] previous job, at least with 'reasonable accommodation.'" *Cleveland*, 526 U.S. at 798.

Relevant here, Hayes has offered no evidence to rebut his SSDI application in which he claimed total disability as of August 30, 2013. Doc. 24-1 *SEALED*. Indeed, on his disability application, the consulting physician noted that Hayes could not return to work at Nortrak due to Hayes' ten-pound lifting restriction and limited ability to stand or walk. *Id.* at 17. Based on these restrictions, Hayes simply cannot perform the essential functions of a track technician. Moreover, Hayes has not offered any evidence or argument to reconcile his SSDI claim of total disability

with his ADA failure to accommodate claim. *See Talavera v. Sch. Bd. Of Palm Beach Cty.,* 129 F.3d 1214, 1220 (11th Cir. 1997) ("[A]n ADA plaintiff is estopped from denying the truth of any statements made in [his] disability application."). Therefore, Hayes' ADA claim fails on this basis alone.

The ADA claim fails also because Hayes cannot perform the essential functions of his position. Doc. 20 at 7. To support its contention that Hayes is not a qualified individual with a disability, Nortrak points to Hayes' testimony that by the end of 2013 "[he] couldn't even walk across the floor." Doc. 21-2 at 81. Hayes does not dispute this contention, nor does he offer evidence that he asked for an accommodation. *See McCarroll v. Somerby of Mobile, LLC,* 595 F. App'x 897, 899 (11th Cir. 2014) ("[T]he duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made.") (internal citation omitted). Instead, he argues that Dr. Moon's certification form indicated that Hayes could have performed the essential functions under a reduced work schedule. Doc. 27 at 13. This contention is unavailing because the form is contradictory at best—i.e., Dr. Moon checked the box indicating that Hayes would need to attend follow-up treatment and/or work part-time on a reduced schedule, but then indicated that the section relating to estimating a reduced work schedule was inapplicable—and Dr. Moon does not state that Hayes has a disability. Doc. 26-1 at 4. Moreover, even if Hayes is disabled, Nortrak has no obligation to transform a full-time position to part-time. *See Lucas v. W.W. Grainger, Inc.,* 257

9

F.3d 1249, 1260 (11th Cir. 2001) ("[E]mployers are not required to transform the position into another one by eliminating functions that are essential to the nature of the job as it exists.").

Put simply, because the form provided by Dr. Moon does not indicate a need for a reduced work schedule or that Hayes in any way suffered from a disability, and in light of Hayes' failure to reconcile his SSDI claim and his ADA claim, summary judgment is due to be granted on Count I.

### B. FMLA Interference (Count II)

Hayes alleges next that Nortrak impermissibly interfered with his FMLA rights by denying him leave. Doc. 1 at 3. The FMLA guarantees eligible employees the right to "12 work weeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). A "serious health condition" is an injury, illness, impairment, or physical or mental condition that involves inpatient care or continuing treatment by a health care provider. *Id.* at § 2611(11). A serious health condition with continuing treatment includes, but is not limited to "a period of incapacity of more than three consecutive full calendar days," "any period of incapacity or treatment for such incapacity due to a chronic serious health condition," or "any period of absence to receive multiple treatments." 29 C.F.R. § 825.115(a)–(f). To prove interference, Hayes must demonstrate by a preponderance of the evidence that he "was denied a

benefit to which he was entitled under the FMLA." *Martin v. Brevard County Public Schools,* 543 F.3d 1261, 1266 (11th Cir. 2008). FMLA interference does not require the employee to allege that the employer intended to deny the benefit; it is enough that the employer denied the benefit. *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001).

Nortrak asserts that Hayes' FMLA claim fails because Hayes cannot satisfy the three-day incapacitation requirement of 29 C.F.R. § 825.115(a). Nortrak overlooks, however, that an employee may also qualify for FMLA leave if she suffers "any period of incapacity" due to either a chronic condition or a condition requiring multiple treatments. 29 C.F.R. § 825.115(c) and (e). Based on the record before the court, the form that Dr. Moon completed indicating that he had seen Hayes "too many [times] to list—monthly since 2009," that he expected Hayes' impairments to continue throughout his life, and that Hayes would need follow up treatment appointments, doc. 21-4 at 53–54, a reasonable jury may find that Hayes suffered from a chronic condition,[3] and that Nortrak interfered with his right to take FMLA. The court recognizes that Nortrak challenges the sufficiency of Dr. Moon's information, and that Johnston concluded that "based on what [Dr. Moon's form] says and absent any other documentation provided, it wasn't appropriate to

---

[3] A chronic serious health problem is further defined by the regulations as one which:
   (1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direction of a health care provider;
   (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
   (3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).
29 C.F.R. § 825.115(c).

11

initiate family medical leave at this point." Doc. 21-4 at 19. Regardless of the purported insufficiency of the form, a dispute exists with respect to what occurred next, with Hayes contending that Johnston never told him he did not qualify for FMLA or that the form was deficient,[4] doc. 26 at 4, and Johnston maintaining that he informed Hayes he was not eligible for FMLA, doc. 21-4 at 19. More importantly, Johnston admits that he never informed Hayes in writing that the form was deficient. Doc. 21-4 at 19–20. Johnston's admission is contrary to the regulations, which require an "employer [to] advise an employee whenever the employer finds a certification incomplete or insufficient and shall state in writing what additional information is necessary to make the certification complete and sufficient." 29 C.F.R. § 825.305(c). This fact, coupled with Nortrak's purported knowledge of Hayes' health problems, *see* docs. 26-1 at 11–19; 21-5 at 3; 21-2 at 45, is sufficient to create a factual dispute about whether the failure to engage in the certification dialogue constituted interference with Hayes' FMLA leave. *See, e.g., Cruz v. Publix Super Mkts., Inc.,* 428 F3d 1379, 1384 (11th Cir. 2005) (an employee can adequately convey to the employer sufficient information to put the employer on notice that an absence is potentially FMLA qualifying). Accordingly, Hayes may proceed with his interference claim.

### C. <u>FMLA Retaliation (Count III)</u>

---

[4] Hayes also testified that although he found out he was rejected for FMLA leave, he still believed that "the FMLA would cover [him] for [his] doctor, if [he] went to the doctor." Doc. 21-2 at 56.

Retaliation is distinct from FMLA interference.[5] To prevail on a retaliation claim, Hayes must demonstrate that Nortrak intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right. *Bradley v. Army Fleet Support, LLC,* 54 F. Supp. 3d 1272, 1282 (M.D. Ala. 2014). Specifically, Hayes must show Nortrak's actions "were motivated by an impermissible discriminatory animus." *Strickland*, 239 F.3d 1199 (11th Cir. 2001). Where, as here, Hayes lacks direct evidence intent, Hayes may prove his claim through circumstantial evidence by showing that the adverse action he challenges was causally related to his protected activity. *Smith v. BellSouth Telecomm., Inc.,* 273 F.3d 1303, 1314 (11th Cir. 2001). For the reasons stated below, the court finds that Hayes has failed to establish the required causal link.

At the outset, it is undisputed that Nortrak discharged Hayes the day after Hayes left work early to seek medical treatment. However, "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Brungart v. BellSouth Telecommunications, Inc.,* 231 F.3d 791, 799 (11th Cir. 2000). Relevant here, as it

---

[5] The statute prohibits an employer from interfering with, restraining, or denying "the exercise of or attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a). In a separate section, the statute also makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(b). Moreover, the regulations to the FMLA specifically state "The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights… [E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220.

13

relates to the accumulated points, although Hayes frequently used vacation days to visit the doctor, he never conveyed this fact to his supervisors. Doc. 21-2 at 58. Moreover, even after Johnston (the decision maker here) informed Hayes in July 2013 that some of Hayes' medical visits for which he used his vacation might qualify as FMLA absences and therefore not count against him in terms of his attendance record, Hayes failed to provide Johnston with the necessary documentation that would have allowed Johnston to determine whether the absences qualified for FMLA. Doc. 21-2 at 56. By failing to do so, Hayes has no legitimate basis to assert that Nortrak improperly assessed him the points for those absences because while, the FMLA prohibits an employer from counting FMLA leave against an employee under a 'no fault' attendance policy when those absences are for a qualifying reason, *see* 29 C.F.R. § 825.220(c), there is no FMLA violation where an employee is discharged after repeated infractions of a detailed attendance policy*, see Earl v. Mervyns, Inc.,* 207 F.3d 1361 (11th Cir. 2000).

With respect to the thirteenth point that led to Hayes' discharge, viewing the evidence in the light most favorable to Hayes, Hayes informed his supervisor he needed to leave to go to the emergency room and, in fact, visited a clinic. Doc. 21-2 at 61. After the visit, although he had a note excusing him from work for three days, Hayes decided to hold onto the note until he returned to work, and, as such, failed to provide the documentation or medical record substantiating this visit immediately afterwards. Doc. 26 at 7 ("Company policy requires that I deliver the

14

medical excuse when I return to work."); Doc. 21-2 at 134 (". . . it is the employee's responsibility to provide [a physician's work authorization form] upon his or her return to work or, in the case of an extended illness, as soon as is practicable."). Consistent with the doctor's advice that he remain at home for three days, Hayes called off work the next day, but informed Nortrak only that his doctor had taken him off work for that day. Doc. 21-2 at 66–67. Moreover, he never suggested during the call that he had, in fact, visited the doctor the day before, or that the doctor had taken him off work for an extended period of time. Doc. 21-2 at 61–62. To make matters worse, even when he received the phone call the next day informing him about his discharge, Hayes still did not inform Johnston that he had a medical excuse for his absence. Doc. 21-2 at 66. Instead, if the court accepts his affidavit testimony instead of his deposition, he waited until the next day after his discharge to try to submit a medical excuse.[6] Doc. 26 at 7.

Based on this record, Hayes has not pointed to any evidence that at the time Johnston discharged him, Johnston knew of Hayes' potentially FMLA qualifying medical condition as it related to his accrued absences, or that Hayes left early on September 16, 2013 for a potentially FMLA qualifying reason. Doc. 21-2 at 79. Moreover, there is no evidence that the supervisor Hayes informed he intended to visit the ER communicated this fact to Johnston. *See Clover v. Total System Services, Inc.,* 176 F.3d 1346, 1355 (11th Cir. 1999) (holding that knowledge of a

---

[6] Hayes alleges in his affidavit that he attempted to submit his excuse the day after his discharge, but was denied access to the premises. Doc. 26 at 7. However, in his deposition, he testified that he never attempted to submit an excuse. Doc. 21-2 at 65–66. These discrepancies do not impact the court's analysis of the retaliation claim.

protected activity is not imputed to a corporation without evidence that the decision maker was aware of the protected conduct). Because the record does not establish that Johnston knew that Hayes was engaging in protected activity when he discharged Hayes, Hayes cannot establish the necessary causal connection between his discharge and his protected activity to support a retaliation claim. *See Strickland,* 239 F.3d at 1207–08 (dismissing an FMLA retaliation claim because "[a] decisionmaker cannot have been motivated to retaliate by something unknown to him.") and *Krutzig v Pulte Home Corporation,* 602 F.3d 1231, (11th Cir. 2010) ("Temporal proximity alone, however, is not sufficient to establish a causal connection when there is unrebutted evidence that the decision maker was not aware of the protected activity.").

  Alternatively, the claim fails because Hayes offers no evidence to rebut Nortrak's legitimate non-retaliatory reason for his discharge, i.e., accumulation of points, other than a general assertion that Nortrak improperly calculated his points and that Nortrak has changed its reasoning for the discharge. Docs. 27 at 13; 26 at 6. These contentions are unavailing because the evidence before this court shows that Nortrak correctly tabulated Hayes' points and, as to the purported shifting reason, the only reason Hayes provides to the court is that Nortrak discharged him

for violating its attendance policy. Docs. 26 at 6; 26-1. For all these reasons, summary judgment is due to be granted on Count III.[7]

## Conclusion

For the reasons above, Defendant's motion for summary judgment is due to be granted on counts I and III, and Hayes may continue his suit on Count II.

**DONE** the 4th day of May, 2016.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[7] Whether Nortrak was entitled to count Hayes' potentially FMLA qualifying absences—including the one that triggered the thirteenth point and for which he submitted an excuse after his discharge—in making its adverse employment decision is not a factor in the court's analysis of Hayes' retaliation claim. If those absences were protected, and Nortrak penalized Hayes for them, that evidence would relate to Hayes' interference claim (Count II). A retaliation claim requires a showing of intentional retaliatory animus on the part of the employer because the employee attempted to invoke FMLA rights, while interference merely requires that the employee establish the employer denied her a right to which she was entitled under the FMLA. *See Hawkins v. BBVA Compass Bancshares, Inc.,* 613 F. App'x 831, 840 (11th Cir. 2015).